INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY
ET AL. v. CLARK & DYER.

No. 7062.

1. **Charge — Wealth of Parties.** — In suit by counsel for fees against a railway company, no testimony being admitted to the wealth of the parties nor was the issue raised otherwise, it was proper to refuse an instruction asked by the defendant "that no greater fee would be reasonable against a wealthy man or corporation than a poor man for the same services," etc.

2. **Attorney Fees—Charge—Reasonable Value.**—There being in evidence the opinion of several lawyers to the value of the services for which compensation was asked, there was also testimony to the amount involved and work performed by the plaintiffs as counsel for the defendant. *Held,* the charge of the court was proper, as follows: "In ascertaining the reasonable value of the services of plaintiffs you will consider the nature of the litigation, the amount involved, and the interests at stake; the capacity and fitness of plaintiffs for the required work; the services and labor rendered by plaintiffs; the length of time occupied by them, and the benefit, if any, derived by defendant from the litigation. And you are further instructed to look to all the evidence in the case and to exercise your sound discretion and judgment thereon, and allow plaintiffs such reasonable amount as you may believe they are justly entitled to."

3. **Employment of Counsel—Ratification.**—See facts in evidence requiring the submission to the jury of the issue of the *ratification* by the Missouri Pacific Railway Company of the employment of Clark & Dyer in a suit to which it was a party.

4. **Reasonable Value—Attorney Fee.**—See facts sustaining a verdict for $5000 for reasonable value of professional services performed by counsel.

APPEAL from Robertson. Tried below before Hon. John N. Henderson.

The opinion states the case.

*F. H. Prendergast* and *Simmons & Crawford,* for appellants, cited Hamman v. Willis, 62 Texas, 510; Head v. Hargrave, 105 U. S., 45; Weeks on Attorneys, secs. 340, 343.

*Scott Field,* for appellees.—1. The court properly refused charge No. 1 requested by the appellants, because the record is silent as to the wealth of the parties; and the general charge given instructed the jury fully as to the elements which should be considered in arriving at the measure of just compensation for plaintiffs. 1 Sayles' Civ. Stats., 440, 441, 439.

2. The court properly refused charges Nos. 2 and 3 asked by defendants. [See opinion.]

(1) Because said instructions if given would have trenched upon the province of the jury, being charges upon the weight of evidence.

(2) Because the testimony of the witnesses (all of whom testified for plaintiffs) was not strictly expert testimony delivered upon a hypothetical case, but the testimony of witnesses acquainted personally and

familiarly with the original cause in equity and the character and amount of plaintiffs services rendered therein.

(3) Because the court had already sufficiently instructed the jury as to all the elements that should enter into their estimate of the value of plaintiffs' services.

3.   The action of the court in submitting to the jury in its general charge an instruction as to the liability of the Missouri Pacific Company was demanded by the pleadings and the evidence; and there was ample evidence to sustain the finding of the jury.   Alcorn v. Butler, 9 Texas, 56;  Fore v. Chandler, 24 Texas, 146;  Jackson v. Clopton, 66 Ala., 29;  Webb v. Browning, 14 Mo., 354.

4.   The compromise or settlement of pending litigation by a client without consultation with his attorney, and without the consent of the attorney, can not be used to defeat the claims of the attorney for reasonable fees, and the attorney has a lawful right to recover in such cases without regard to the settlement, and as if the case had been finally tried.   Myers v. Crockett, 14 Texas, 257;  Kersey v. Garton, 77 Mo., 645;  Hunt v. Test, 8 Ala., 713.

COLLARD, JUDGE, *Section A.*—This is a suit filed by Clark & Dyer, a firm of lawyers, against the International & Great Northern Railway Company and the Missouri Pacific Railway Company, on May 9, 1888, for $5000 due them as a fee for attending to the defense of a suit by the Texas Express Company v. International & Great Northern Railway Company in the United States court at Waco.   The defense was a general denial.

Clark & Dyer were employed by the International & Great Northern Railway Company to represent them as their attorneys in a suit in equity in the United States Circuit Court at Waco, brought against it by the Texas Express Company to compel the former to carry for it its express matter and messengers.   A preliminary injunction was granted requiring the railway company to so transport for the express company at reasonable rates.   About the 29th of March, 1881, Clark & Dyer were employed as before stated.   In June, 1881, the Missouri Pacific Railway Company leased and took possession of the International & Great Northern Railway and operated the same during the pendency of the litigation, observing the injunction, and doing the carrying for the express company.   In 1887 the suit was settled by agreement of the parties, and on May 16, 1887, Clark & Dyer were instructed to have the case dismissed at cost of the complainant and disposed of according to the agreement, which was done, after some delay, in April, 1888.   There was no contract made as to the amount of the fee except that a retainer of $100 was to be paid at once, it being impossible at the time of employment to correctly determine what it ought to be.   The amount was never agreed on, and this suit was

brought on a quantum meruit. The case was tried and resulted in a verdict for plaintiffs for $5000 against both of the defendants, who have appealed.

First assigned error: The court erred in refusing special charge No. 1 asked by defendant, which is as follows: "The jury are charged that no greater fee would be reasonable against a wealthy man or corporation than a poor man for the same services, and you will not allow the wealth of the parties engaged in the litigation to influence your finding as to what would be a reasonable fee for the services, unless the same 'increased or diminished the burden of the services of the attorney."

There was no evidence of the wealth of the parties and no issue made upon it. Such a charge as the one asked was held to be proper in the case of Hamman v. Willis & Bro., 62 Texas, 507, but the evidence in that case as to the wealth of the parties rendered the charge applicable. Looking to the original record of that case on file in this court (file number 5232) we see that the wealth of the litigating parties and their great influence was made an issue by the testimony; that there was a plea of non est factum to the note filed in the original suit, and that there was unusual interest in the trial and result of the case on the part of the litigants. The issues authorized the charge in that case, but in this it was not error to refuse it.

Second assigned error: The court erred in refusing special charge No. 2 asked by defendant, as follows: "In determining the amount due by defendant to plaintiffs the jury are not bound by the opinion of the witnesses as to the amount due, unless, in view of all the facts and circumstances of the litigation, the jury think such opinions are correct."

Another charge was requested by appellant somewhat similar to the foregoing (which was refused by the court), as follows: "The jury are charged that in determining the value of the plaintiffs' services the jury are not bound by the estimate placed on said services by the expert witnesses; that testimony may be considered by the jury; but if, in the judgment of the jury, the value fixed by said witnesses is not just, they may find the amount they (the jury) think just and reasonable."

Alex. White, an attorney who was familiar with all the matters in litigation in the suit of the express company against the railway, and who represented the express company from first to last in the suit and knew what services were rendered by plaintiffs, testified that $5000 to to $7500 would be a reasonable fee. John T. Flint, appointed master in chancery in the case to take an account between the railway and the express company and ascertain the amount due the railway for carrying freights for complainant in the original suit pending the injunction, testified that $5000 would be a reasonable and fair fee.

Baker, Botts & Baker, who were the general attorneys of the defend-
ants and who retained plaintiffs to defend the suit, when applied to by
Clark & Dyer to have the fee fixed and paid at $5000, recommended
the amount to their principals as a proper fee.  A full history of the
case and the services rendered were before the jury.  It was their
province from all the evidence before them to determine the value of
the services; it would not have been proper for the court to comment
on the evidence of experts as requested.  The charge given by the
court was fair and correct.  Upon this subject it was in the following
language:  "In ascertaining the reasonable value of the services of
plaintiffs you will consider the nature of the litigation, the amount in-
volved and the interests at stake, the capacity and fitness of plaintiffs
for the required work, the services and labor rendered by plaintiffs,
the length of time occupied by them, and the benefit, if any, derived
by defendants from the litigation.  And you are further instructed to
look to all the evidence in the case and to exercise your sound discre-
tion and judgment thereon, and allow plaintiffs such reasonable amount
as you may believe they are justly entitled to, not to exceed the amount
claimed in their petition."   This charge did not confine the jury to the
opinions of experts in considering the amount to be awarded, but left
it to the sound discretion of the jury under all the evidence, unim-
pressed by any opinion of the court.

Fourth error assigned:  The court erred in the second clause of the
charge in submitting to the jury the question as to whether the Missouri
Pacific Railway Company ratified the employment of plaintiffs, because
there was no evidence of any ratification.

Briefly and without going into the details of all the elements consti-
tuting the fee and the relation of the parties to the suit, it might be well
in this connection to make an additional statement of some of the im-
portant facts connected with it.

Clark & Dyer were not employed in the case until the preliminary
injunction had been granted; they then took charge of the defense
and filed an answer.  The case was continued under various agree-
ments, and finally it was agreed by the parties or their counsel that it
should abide the result of a suit of a similar character pending in
the United States Circuit Court at St. Louis, Mo.  That case in St.
Louis was tried and decided against the railway and appealed to the
Supreme Court of the United States, where, in October, 1885, there
was a reversal of the decision of the Circuit Court; the Supreme Court
holding that the railway company was not bound to carry for the ex-
press company or to furnish them car room for their business, and the
bill was dismissed; but the cause was ordered to remain on the docket
until an account could be taken between the railway and the express
company for car room furnished by the railway pending the injunction.
Clark & Dyer then filed a plea to suit the new aspect of the case, and an

itemized account of charges against the express company during the time the railway had, in obedience to the writ of injunction, done the carrying for the express company, the items of charges in the account aggregating more than $1,000,000, the credits $300,000, leaving a balance due the railway of $700,000.   Exceptions were filed to the claim, which, upon hearing by the master in chancery appointed for the purpose of taking the account, were overruled.   Time was given to the express company to file a counter-claim.   It had been prepared by complainants (the express company's counsel), but before it was filed the parties, without consulting Clark & Dyer and without their knowledge or consent, settled or compromised the matters in controversy.   A memorandum or instruction for final dismissal showed that "the accounts between the International & Great Northern Railway Company and the express company were to be considered square."   The attorneys Clark & Dyer were not informed of the terms of settlement, and have never been informed except by the expression in the memorandum of settlement above quoted.   The same memorandum stated that the Iron Mountain road (whose case had been carried to the United States Supreme Court on the question of the express company's injunction rights) was to be paid $36,000.   Clark & Dyer were notified of the compromise in May, 1887, but they were not able to learn the terms of the agreement as to costs, etc., for some time, and the case was not finally disposed of by dismissal until April, 1888.   They frequently consulted with Baker, Botts & Baker, general attorneys for the Missouri Pacific Railway Company's leased and operated lines, about the case, by whom as such attorneys the fee of $5000 was indorsed as reasonable and recommended for early adjustment.

We think it can not be doubted that the Missouri Pacific Railway Company accepted the services of Clark & Dyer in the matter of their employment.   The services rendered after June 1, 1881, up to the conclusion of the controversy, during which time the Missouri Pacific Railway Company controlled and operated the road under lease, were for the benefit of that company.   It was necessarily to that company that a greater part of the items of the account claimed before the master in chancery was due.   Our conception of the matter is that the Missouri Pacific Railway Company took the place of the International & Great Northern Railway Company in the litigation with the express company and assumed its responsibilities, but whether this is absolutely correct or not we are not required to decide.   There was certainly sufficient evidence before the court to justify the charge submitting to the jury the question of ratification of the employment of Clark & Dyer by that company, and there was ample evidence to support the finding that there was such ratification.

. We are not prepared to approve the last assignment of error, that the verdict is excessive.   We have given a general history of the litigation

without mention of all the particulars incident to it constituting elements of the fee, and deem it unnecessary to further review the evidence. We think it was sufficient to support the verdict. The question was fairly submitted to the jury, and we see no reason for holding that their conclusion as to amount should be set aside.

We think the judgment of the court below should be affirmed.

*Affirmed.*

Adopted May 12, 1891.